# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HAKAN SENALAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 05161 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MARK C. CURRAN, JR. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hakan Senalan brings this lawsuit against several corrections officers at the Lake County Jail, and Senalan also names the Lake County Sheriff and the Lake County Sheriff's Office, alleging violations of his constitutional rights under 42 U.S.C. § 1983.[1] R. 29, Second Am. Compl. Senalan has amended his complaint twice, and each complaint has drawn a motion to dismiss from Defendants. *See* R. 8, First Mot. Dismiss; R. 15, Second Mot. Dismiss. Defendants now move to dismiss his second amended complaint. R. 31, Third Mot. Dismiss. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## I. Background

Hakan Senalan was arrested on May 11, 2011 for misdemeanor domestic battery and taken to Lake County Jail. Second Am. Compl. ¶ 8. Senalan suffers from schizophrenia and was allowed to bring his prescribed antipsychotic

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

medication, Seroquel, into jail with him. *Id.* ¶¶ 7, 9. A few weeks later, Senalan ran out of his medication. *Id.* ¶¶ 9-10. He told the medical staff at Lake County Jail that he had run out, but he refused to take the generic substitute offered by the jail medical staff. *Id.*

On July 18, 2011, Senalan was still unmedicated. *Id.* ¶ 11. That day, Corrections Officers John Upton and Martin Mazur went to Senalan's cell to discuss a minor rule violation. *Id.* ¶ 12. "Feeling threatened by the presence of the two officers in the doorway to his cell, an unmedicated and delusionally paranoid Hakan Senalan rose to his feet while the officers were blocking the doorway." *Id.* ¶ 13. When Senalan stood, Upton forcefully pushed Senalan back. *Id.* Upton then sprayed Senalan in the face with pepper spray. *Id.* ¶ 14. When Senalan remained standing, Upton tried to use his taser to stun Senalan. *Id.* The taser did not deploy, so Upton used the taser directly on Senalan's body. *Id.* Because the taser "had not had its full and intended effect," Upton hit Senalan in the face. *Id.* ¶ 15. Upton and Mazur then subdued Senalan in his cell. *Id.* ¶ 17. A few minutes later, Corrections Officers Carnell Reed, Matthew Rice, and Timothy Pfleger arrived at Senalan's cell. *Id.* ¶ 18. Reed directed Upton and Mazur to leave the cell, and Rice, Reed, and Pfleger restrained Senalan and removed him from his cell. *Id.* They took him to a booking cell, stripped him naked, and pushed him to the floor. *Id.* ¶ 19.

After hearing about the incident, Lake County Jail psychiatrist Dr. H. Singh, who is not a defendant in this lawsuit, determined that Senalan should be forcibly given an antipsychotic medication. *Id.* ¶ 20. In response to Dr. Singh's order,

2

Sergeants W.R. Kinville and Terry King "activated the Lake County Jail Corrections Response Team to assist the Lake County Jail medical staff" in administering the medicine to Senalan. *Id.* ¶ 21. Kinville was tasked with videotaping the forced medication. *Id.* ¶ 22. Reed, Rice, Mazur, and Pfleger went to Senalan's cell, where he was still lying naked on the floor. *Id.* ¶ 23. After ordering Senalan to remain on the floor, the officers "rushed into the cell and piled on top of" Senalan. *Id.* ¶ 24. Reed restrained Senalan's right side, Rice restrained his left side, and Mazur restrained his legs, all while Senalan was pleading with them to stop. *Id.* ¶ 25. While Senalan was restrained, Lake County Jail Nurse Oscar Caceres, who is also not a defendant in this suit, injected the antipsychotic. *Id.* ¶ 26. The officers then backed out of the cell, while Senalan remained on the floor. *Id.* ¶ 27. Based on this incident, Senalan was charged with misdemeanor battery, aggravated assault of a peace office, and resisting a peace officer. *Id.* ¶ 28. Those charges were later dismissed. *Id.* ¶ 29.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep

plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Many of Defendants' arguments supporting their motion to dismiss are based upon the labels that Senalan assigned to each count of his complaint. Although the Court is sympathetic to the difficulty of responding to a poorly labelled complaint (like this one), strictly speaking, plaintiffs in federal court are not required to plead legal theories. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (en banc) (per curiam). "The question for [the court] is whether the petition adequately presents the legal and factual basis for the claim, even if the precise legal theory is inartfully articulated or more difficult to discern." *Ambrose v. Roeckman*, 749 F.3d 615, 618 (7th Cir. 2014) (citations omitted). The Court will therefore look to the facts alleged by Senalan—not the label given to each count in

the complaint—to determine if he has stated a claim upon which relief can be granted.

## A. False Arrest/Unlawful Detention

Senalan first asserts a claim for false arrest or unlawful detention under § 1983. Second Am. Compl. ¶¶ 32-37. "[A] false arrest is an unreasonable seizure prohibited by the Fourth Amendment." *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, … in some way restrained the liberty of a citizen." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). But after an individual becomes a pretrial detainee, the Fourth Amendment no longer provides the source of their protection from unconstitutional seizures within that already-custodial setting; that protection comes instead (and if at all) from the due process clause of the Fourteenth Amendment.[2] *See Kingsley v. Hendrickson*, 744 F.3d 443, 448-49 (7th Cir. 2014) ("Between the status of arrestee and sentenced prisoner is the intermediate status of the detainee, who similarly is entitled to protection from physically abusive government conduct. The constitutional source of that protection lies in the right to be free from deprivations of liberty without due process of law."); *see also Forrest v. Prine*, 620 F.3d 739, 743-44 (7th Cir. 2010) ("[T]he Fourth Amendment right to be free from unreasonable

---

[2]The false arrest claim cannot be premised on Senalan's original arrest for domestic battery because that claim is time-barred. The domestic-battery arrest took place on May 11, 2011, Second Am. Compl. ¶ 8, more than two years before Senalan filed his initial complaint on July 18, 2013, *see Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) (noting that there is a two-year statute of limitations for § 1983 claims arising in Illinois).

5

searches and seizures has temporal limitations."). When the events described in the complaint occurred, Senalan was a pretrial detainee at the Lake County Jail. To state a claim based on a restraint of his liberty, therefore, Senalan must allege facts that support a claim for relief under the due process clause, not the Fourth Amendment.

Construing the factual allegations in the complaint generously, Senalan seems to be alleging that his liberty was restricted when he was moved from one cell to another, which resulted in him being charged with various misdemeanors based on the incident of July 18, 2011. Second Am. Compl. ¶¶ 17-19, 24-25, 28 (describing the forcible move to a second cell and noting that he was charged with misdemeanor battery, aggravated assault of a police officer, and resisting a peace officer); *see also* R. 34, Pl.'s Resp. Br. at 4 (describing the move to the cell as a wrongful seizure). Defendants argue that Senalan cannot state a claim for relief because he was already in custody at the time of the July 18, 2011 incident, and therefore suffered no loss of liberty from Defendants' actions. Third Mot. Dismiss at 3-4. Defendants are partially correct.

A pretrial detainee may make two types of due process claims. The first challenges the conditions of the detainee's confinement that deprive him of liberty or property without due process of law. *See Sandin v. Conner*, 515 U.S. 472, 484-86 (1995); *see also Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011) ("[D]etainees still have the same right as criminals to complain of a deprivation of liberty without due process of law if the restrictions constitute a deprivation of liberty within the

meaning of the Constitution as interpreted by the Supreme Court … in *Sandin*."). The second protects a pretrial detainee's right to be free from punishment without adjudication of his guilt or innocence. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). For both types of claims, the detainee must show that the restriction or condition affected a protected liberty interest. *See, e.g., Holly v. Woolfolk*, 415 F.3d 678, 679-80 (7th Cir. 2005); *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

The misdemeanor charges arising from the July 18, 2011 incident did not result in any additional restraint on Senalan's liberty at all. Senalan was already lawfully confined and awaiting trial on the domestic violence charges for which he was initially arrested, and he has made no allegations that the misdemeanor charges in any way changed the conditions of his confinement. *See Burress v. Lincoln & Devon Shell Gas Station*, 1992 WL 69989, at *3 (N.D. Ill. Mar. 31, 1992) ("The disputed warrant in this case did not result in any restraint on [plaintiff's] liberty because he was already in custody on unrelated charges when it was executed on him."); *Johnson v. Leger*, 2009 WL 902384, at *8 (D. Conn. Mar. 31, 2012) ("A plaintiff does not state a claim for either false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody or incarcerated on other charges, because there is no deprivation of his or her liberty interests."). Because charging Senalan based on the incidents on July 18, 2011 did not affect any protected liberty interest, claims based on those allegations must fail. But Senalan's claims surrounding his removal from his cell and placement in the booking cell may implicate his liberty interests, however

7

slightly. *See Holly*, 415 F.3d at 679 ("[T]here is no required minimum amount in controversy in a federal civil rights suit."). The Court will therefore address his potential due process claims based on Senalan's removal to the booking cell.

Under *Sandin v. Conner*, a person who is lawfully held in custody is subject to "the necessary withdrawal or limitation of many privileges and rights." 515 U.S. at 484-85 (internal quotation marks and citation omitted); *see also Miller*, 634 F.3d at 415 (applying *Sandin* to pretrial detainees). These limitations will only implicate the due process clause when they impose an "atypical and significant hardship" on the detainee. *Sandin*, 515 U.S. at 484. A restriction or condition of confinement must be "a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty under the *Sandin* doctrine," *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003), and "[d]isciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause." *Miller*, 634 F.3d at 414-15.

Based on these standards, Senalan cannot show that his due process right was violated. The incremental effect on Senalan's liberty when he was removed to the booking cell was trivial. Senalan has not alleged that he was in the cell for an unreasonable amount of time; he was there for hours, not days. *See* Pl.'s Resp. Br. at 4. Periods of segregation that are far longer do not rise to an actionable restraint on liberty. *See, e.g., Sandin*, 515 U.S. at 485-86 (30 days in solitary confinement); *Townsend v. Fuchs*, 522 F.3d 765, 770-72 (7th Cir. 2008) (59 days in administrative segregation). Nor has Sandin made any allegations that would support the

8

inference that the temporary confinement in the booking cell was so restrictive as to be an atypical or significant hardship. Although Senalan's isolation while confined in the booking cell may have been complete, it was relatively brief and did not restrict his freedom enough to amount to a due process violation under *Sandin*.

Because he is a pretrial detainee, Senalan may also bring a claim alleging that restrictions on his liberty violated his due process protection from punishment. *Bell*, 441 U.S. at 535-36. A restriction or condition on a pretrial detainee may "amount to punishment" in violation of the due process clause when (1) "there is a showing of express intent to punish"; (2) "when the restriction or condition is not rationally related to a legitimate non-punitive government purpose"; (3) "when the restriction is excessive in light of that purpose"; or (4) "if prison officials are 'deliberately indifferent' to a substantial risk to the detainee's safety." *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (citing *Bell*, 441 U.S. at 538; *Zarnes v. Rhodes*, 94 F.3d 285, 290 (7th Cir. 1995)); *see also Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) ("[C]onditions of confinement which are reasonably related to a legitimate and non-punitive government goal are not unconstitutional." (internal quotation marks and citation omitted)). Thus, Senalan may state a claim based on the restrictions of his liberty if he has plausibly alleged that moving him to the second cell "amount[ed] to punishment" in some way.

Senalan has not done so. Apart from bare legal conclusions, Senalan has not made any allegations that moving him to the second cell had any punitive purpose whatsoever. S*ee* Second Am. Compl. ¶ 34 (using terms like "malice," "willfulness,"

and "reckless indifference" untethered to any factual allegations). Senalan himself alleges that he had just had a physical altercation with guards and was in the middle of a schizophrenic episode. Second Am. Compl. ¶¶ 13-18. Temporarily removing a prisoner from his cell to maintain order and security is an acceptable non-punitive purpose. *Bell*, 441 U.S. at 546-47 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). Nor has Senalan set forth any legal conclusions—let alone facts—that would suggest that the temporary confinement was excessive in light of this purpose. And Senalan makes no allegations that the second cell posed any risk to him. In fact, Senalan has not alleged that being confined in the booking cell even posed any risk to his safety. *Cf. Zarnes*, 64 F.3d at 290 (holding that an inmate stated a claim under the due process clause when guards had placed her in a cell with a dangerous inmate). Senalan only alleges that he was removed from his cell and confined temporarily in the booking cell (where he was forcibly medicated—the subject of a different claim). The bare fact that he was held in a different cell does not support a claim that the restraint "amount[ed] to punishment" and thus violated the due process clause. Senalan's claims based on the restraints on his liberty therefore fail to state a claim.

**B. Excessive Force**

Senalan's next claim is for "assault and battery" under § 1983.[3] A "serious" assault and battery may rise to the level of a constitutional violation actionable under the due process clause of the Fourteenth Amendment. *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003). Valid due process (as distinct from Fourth Amendment) claims for assault and battery are rare, and the cases discussing battery claims under § 1983 do not involve confined plaintiffs. *See Alexander*, 329 F.3d at 916; *Hilton v. Lincoln-Way High School*, 1998 WL 26174, at *8-9 (N.D. Ill. Jan. 14, 1998). For pretrial detainees, however, a claim of excessive force is similarly evaluated under the Fourteenth Amendment's due process standard. *Kingsley*, 744 F.3d at 448-49. Because excessive force is the more familiar standard for batteries committed on individuals in prison,[4] the Court will interpret Senalan's assault and battery claim as an excessive force claim.

"The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." *Forrest*, 620 F.3d at 744. Often, however, courts decide Fourteenth Amendment cases "by employing the more familiar Eighth Amendment standard." *Kingsley*, 744 F.3d at 450. Because Senalan has not

---

[3]It is possible that a state-law claim for assault and battery could arise from the same set of facts underlying the "assault and battery" claim under § 1983, but Senalan does not assert one (or any state-law claim). If Senalan wishes to assert any state-law claims, he must move to amend his complaint. Should he chose to do so, Senalan must investigate what the standards are under Illinois law for assault and battery in the confinement setting.

[4]Defendants appear to concede that Senalan has stated a claim, however inartfully, for excessive force. Third Mot. Dismiss at 4 (stating that an excessive force claim "would be a viable claim under the facts [Senalan] alleges").

explained how the Fourteenth Amendment would provide him with more protection than those of the Eighth, the Court will borrow the Eighth Amendment standard in this case. *See Forrest*, 620 F.3d at 744. To state a claim for excessive force, therefore, Senalan must show that the force was an "unnecessary and wanton infliction of pain" that was "intended maliciously and sadistically to cause harm" to him. *Id.* (internal quotation marks and citations omitted).

Accepting Senalan's factual allegations as true and drawing reasonable inferences in his favor, Senalan has stated a claim for excessive force. Senalan alleges that he was pushed, pepper sprayed, stunned with a taser, beaten, and subdued in his cell. Second Am. Compl. ¶¶ 12-16. Then, when lying naked and prone on the floor of the booking cell, four officers jumped on him and violently restrained him while he screamed for them to stop. *Id.* ¶¶ 24-26. If, as Senalan alleges, he was not threatening or resisting in any manner, this force could certainly be seen as unnecessary, wanton, or malicious.

Despite Defendants' arguments to the contrary, Senalan did not plead himself out of court. Third Mot. Dismiss at 8-9. It is true that Senalan stated that he was unmedicated and experiencing a paranoid delusion when the officers entered his cell, Second Am. Compl. ¶ 13, but experiencing a paranoid delusion does not foreclose the possibility that the force was unnecessary and wanton. Of course, if Senalan's delusion made him violent or confrontational, the use of force may have been necessary to maintain order or to prevent Senalan from harming himself or others. But Senalan did not allege that he himself was confrontational, violent, or

resisting. He alleges only that he was suffering from a delusion and stood when the officers entered the room. Senalan's factual allegations do not, therefore, "establish an impenetrable defense to [his] claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). His allegations that he was unmedicated and suffering from a paranoid delusion can, at this stage in the litigation, coexist with his allegation that the force used against him was wanton or unnecessary. Although it may be unlikely that Senalan will ultimately prevail on his claim for excessive force, the allegations in his complaint are sufficient to survive a motion to dismiss.[5]

Defendants also make an argument that the officers are entitled to qualified immunity for any claims arising from the forcible medication of Senalan. Third Mot. Dismiss at 9. The Court need not address this argument, because Senalan has not stated a claim based on the forcible medication itself. According to Senalan, Dr. Singh gave the order to forcibly medicate him, and Nurse Caceres actually administered the medication. *See* Second Am. Compl. ¶¶ 20, 26. Neither Singh nor Caceres is a defendant in this lawsuit. Senalan has not alleged that any of the Defendants were involved in the decision to forcibly medicate him, and he has not alleged that they actually administered the antipsychotic. Moreover, Senalan has made no effort to state a claim that he was administered the antipsychotic

---

[5]It is not clear at this stage whether Senalan has adequately alleged the personal involvement of each Defendant Officer in the incidents giving rise to the excessive force claim. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation.") (internal quotation marks and citation omitted). Because the Defendants (justifiably) relied on Senalan's labels for his claims in their motion to dismiss, the Court will allow the Defendant to file a second motion to dismiss based on lack of personal involvement, if necessary, in light of the remaining claims.

13

medication in violation of his due process rights. *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990). Senalan's surviving claims against the Defendants, therefore, are limited to their alleged use of excessive force when confronting him in his cell and their alleged use of excessive force in piling on top of him when he was naked and prone in the holding cell.

## C. Conspiracy

Senalan also brings a claim alleging that the Defendant Officers entered into a conspiracy to deprive him of his constitutional rights. Second Am. Compl. ¶¶ 43-53. Perplexingly, Senalan brings this conspiracy claim under 42 U.S.C. § 1985(3). Among other things, "[a] plaintiff raising a claim under § 1985(3) must allege … a purpose of depriving a person or class of person of equal protection of the laws." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) (internal quotation marks and citation omitted). To satisfy this requirement, the plaintiff must allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted). In the second amended complaint, Senalan did not even allege his race, let alone that Defendants conspired to discriminate against him on that basis. Recognizing that some showing of racial discrimination is required under § 1985(3), Senalan argues in his response to the dismissal motion that no such showing is required under another subsection, namely, § 1985(2). Pl.'s Resp. Br. at 7-8. But to state a claim under § 1985(2), Senalan must allege that Defendants conspired to

somehow deter him from attending or testifying in court or otherwise impede the due course of justice. *See* 42 U.S.C. § 1985(2). There are no such allegations.

A more fitting label for this claim would be a conspiracy to deprive Senalan of his constitutional rights under § 1983.[6] Although conspiracy claims under § 1983 are not subject to a heightened pleading standard, "a bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). At a minimum, therefore, Senalan must identify the parties to the conspiracy, the purpose of the conspiracy, and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

Although it is a very close call, Senalan has alleged facts at this stage sufficient to put Defendants on notice of the conspiracy claim against them. *See id.* ("Federal pleading entitles a defendant to notice of the plaintiff's claim so that he can prepare responsive pleadings."). Senalan has alleged facts supporting the claim that the Defendant Officers used force on him on July 18, 2011. Second Am. Compl. ¶¶ 12-26. He has alleged that this force was not justified by any threat to safety or order, and was therefore excessive. *Id.* ¶¶ 46-48. And he has alleged facts that reasonably support an inference that the Defendant Officers communicated with

---

[6]Ordinarily, conspiracies under § 1983 are used to bring a private actor under the ambit of § 1983. *See Logan v. Wilkins*, 644 F.3d 577, 583 n.1 (7th Cir. 2011) ("But the 'conspiracy matters only' with respect to [the private-actor defendants], because the other defendants 'are state actors, and thus amenable to suit under 42 U.S.C. § 1983, by virtue of their offices.'") (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Although a conspiracy claim alleging the involvement of only state actors may not be particularly fruitful for Senalan, it is not prohibited. *See Boothe v. Sherman*, 2014 WL 4362842, at *4-5 (N.D. Ill. Sept. 3, 2014).

15

one another on that day. *Id.* ¶¶ 12, 18, 21-22. These factual allegations are enough to support a claim that the Defendant Officers engaged in a conspiracy to use excessive force against Senalan on July 18, 2011. The motion to dismiss the conspiracy claim is denied.

### D. *Monell* Liability

Count 4 of Senalan's complaint is titled "Color of Law." Although Defendants are correct that there is no freestanding claim under § 1983 for "Color of Law," the substance of the allegations in Count 4 suggests that Senalan is attempting to plead a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Second Am. Compl. ¶¶ 56-59 (alleging a lack of "meaningful training to correctional officers in … dealing with un-medicated persons who suffer from mental illness" and the "Lake County Sheriff's Office policy … when dealing with mentally unstable inmates"). Under the *Monell* theory of liability, a plaintiff may state a claim against a municipal corporation—like the Lake County Sheriff's Office—if "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). A failure to train may constitute an official custom or policy for purposes of liability § 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [corrections officers] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on

16

evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government.").

Here, Senalan alleges that The Sheriff of Lake County "offer[s] no meaningful training to correctional officers in the dealing with un-medicated persons who suffer from mental illness."[7] Second Am. Compl. ¶ 56. He also alleges that "numerous persons housed in the Lake County Jail [have] complained that correctional officers were physically abusive and exercised unnecessary and excessive force upon inmates of the jail." *Id.* ¶ 57. According to Senalan, "[t]he Lake County Sheriff's Office policy … when dealing with mentally unstable inmates is of an injurious nature so as to willfully, and maliciously, and without conscious regard inflict injury to mentally unstable inmates by using excessive force." *Id.* ¶ 59. Senalan does not allege facts (which are entitled to the assumption of truth at this stage) that plausibly suggest that the inadequate training rose to the level of deliberate indifference. Proof of deliberate indifference may be shown by failure to act in response to repeated complaints, *see Sornberger*, 434 F.3d at 1029, but Senalan's bare allegation of "numerous" complaints lacks sufficient factual detail to satisfy the standard of Rule 8(a)(2), *Twombly*, 550 U.S. at 555 (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). The *Monell* claim against the Sheriff's Office is dismissed. If Senalan later can allege

---

[7]Senalan also makes conclusory allegations about a policy or custom of the Sheriff's Office in his false arrest claim. Second Am. Compl. ¶ 36 ("The misconduct described in this Count was undertaken pursuant to a policy and practice of the Lake County Sheriff's Department."). Because the "misconduct described in [that] Count" failed to state a claim for relief, the policy and practice claims related to the same conduct also fails to state a claim. Even if the false arrest claim were viable, however, the allegations of a custom or practice lack sufficient factual detail to make out a plausible claim for *Monell* liability.

17

facts, perhaps after discovery working from the bottom-up, to state a viable *Monell* claim, then he may propose adding the claim again.

### E. Indemnification

Defendants' only argument for dismissal of the indemnification count is premised on the dismissal of Senalan's other claims. Third Mot. Dismiss at 10. Because the excessive force and conspiracy claims remain in the case, Defendants' motion to dismiss the indemnification count is denied.

### IV. Conclusion

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part. Senalan has set forth facts that plausibly allege claims of excessive force and conspiracy under § 1983. Because these claims remain in the case, Senalan's indemnification count also remains in the case. His claim for false arrest and his *Monell* claim are dismissed for failure to state a claim.

On or before February 20, 2015, Defendants must file an answer to the Second Amended Complaint. Because the Court went to some lengths to construe the factual allegations in Senalan's complaint, the surviving claims as described in this Opinion might not align precisely with the Second Amended Complaint as written. If Defendants believe that a particular allegation is no longer material in light of the Court's description of the remaining claims, they need not respond to those allegations in their answer, and just refer to this Opinion.

A status hearing to set the discovery schedule is set for February 27, 2015, at 8:30 a.m. The parties shall file an updated initial status report, using the format described in R. 25, by February 24, 2015. The parties are encouraged to explore

settlement, and the Court notes that, in light of the unreasonable failings of the way the complaint was pled, then pled, and pled again, and the extraordinary expansiveness in which the Court has interpreted the second amended complaint to fit with valid claims, it is seriously questionable whether, even if Senalan were to eventually prevail in this case, that the plaintiff's attorney's fees would be compensable for most, if not all, of the work to-date.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 2, 2015