IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAKAN SENALAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 13 C 05161 |
| | ) | |
| MARK C. CURRAN, JR. et. al., | ) | Judge Edmond E. Chang |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants, Mark C. Curran, Jr., Sheriff of Lake County ("Curran"), William Kinville ("Kinville"), Terry King ("King"), Matthew Rice ("Rice"), Carnell Reed ("Reed"), John Upton ("Upton"), Timothy Pfleger ("Pfleger"), and Martin Mazur ("Mazur") (hereinafter referred to collectively as "Defendants"), by and through their attorneys, Julie M. Koerner, Bhairav Radia, Katharine P.A. Smeenk, and for their Answer and Affirmative Defenses to Hakan Senalan's ("Plaintiff") Second Amended Complaint, state as follows:

1. Plaintiff, Hakan Senalan, is a thirty-nine (39) year old man with mental illness. He suffers from bipolar disorder and schizophrenia, paranoid type. His date of birth is June 6, 1974. He resides in Lake Forest, Illinois.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's claim regarding any mental health diagnoses or conditions of which Plaintiff may suffer or as to his current residence. Defendants admit that Plaintiff reported his date of birth as stated in Paragraph 1.**

2. Defendants Kinville, King, Rice, Reed, Upton, Pfleger, and Mazur, sued herein in their individual and official capacity, are Lake County Jail corrections officers employed at all relevant times by the Lake County Sheriff's Office. At all times relevant hereto, the Defendant

corrections officers were acting within the scope of their employment as corrections officers for the Lake County Sheriff's Office.

**ANSWER:** **Defendants admit that, at all relevant times, all contact with Plaintiff occurred while they were acting in the course and scope of their employment as correctional officers for the Sheriff of Lake County, and admit that Plaintiff's pleadings purport to bring individual capacity claims against each correctional officer.**

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. Sec. 1983 to redress Plaintiffs deprivations under color of law as secured by the Constitution of the United States.

**ANSWER:** **Defendants admit that Plaintiff's pleading purports to bring a claim under §1983, *inter alia*, and that jurisdiction in this court is proper.**

4. This court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1331.

**ANSWER:** **Defendants admit that jurisdiction in this court is proper.**

5. Venue is proper in this district under 28 U.S.C. Sec. 1391(b). The Defendants reside (or are employed within), and the events giving rise to the claims asserted, occurred in Lake County, Illinois.

**ANSWER:** **Defendants admit that venue in is proper.**

6. This action is properly filed in the Northern District of this District Court pursuant to Local Rule 40.1 (A) as all events giving rise to the claims asserted occurred within the jurisdictional boundaries of the Northern District of this District Court.

**ANSWER:** **Defendants admit that venue is proper.**

## FACTS SUPPORTING THIS COMPLAINT

7. In July 2005, Hakan Senalan was diagnosed by Dr. Aamir Safdar at Riveredge Hospital in Forest Park, Illinois as suffering from schizophrenia, chronic paranoid type. He was

prescribed Haldol and Seroquel, antipsychotic medication, to combat the schizophrenia which he took continuously until the incident at issue in this cause.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's claim regarding any mental health diagnoses, conditions, or prescribed medications or the period of time over which he may have been diagnosed with or suffered from these conditions.**

8. On or about May 11, 2011, Hakan Senalan was placed in the custody of the Lake County Jail in Waukegan, Illinois, after being arrested on charges of misdemeanor domestic battery.

**ANSWER:** **Defendants admit that Plaintiff was initially arrested on domestic battery charges on April 1, 2011, and that he was held in custody at the Lake County jail until April 6, 2011 when Plaintiff was released on his personal recognizance. Defendants admit that on May 11, 2011, Plaintiff's bond was revoked and he was remanded back into custody at that time.**

9. Though Hakan Senalan was permitted to bring his antipsychotic medication, Seroquel, into the Lake County Jail, he ran out of his monthly supply on or about June 7, 2011. Hakan Senalan informed jail medical staff that he had run out of Seroquel.

**ANSWER:** **Defendants admit the allegations of Paragraph 9.**

10. On June 21, 2011, Hakan Senalan again informed Lake County Jail medical staff that he had run out of Seroquel. Hakan Senalan advised the staff that he needed his medication and that without it, his mental illness would worsen. He told staff members that he wanted to stay on Seroquel because substitute medications have a negative effect on his state of mind and well-being. Lake County Jail staff, however, informed Hakan Senalan that administering the prescribed Seroquel was too expensive, and that the jail could only give him Risperdal, a substitute antipsychotic.

**ANSWER:** **Defendants admit that the medical staff at the jail was aware that Plaintiff had no more Seroquel on or about June 21, 2011, and that medical records indicate that Plaintiff was offered substitute psychotropic medications. Defendants deny the remaining allegations of Paragraph 10.**

11. On July 18, 2011, the date of incident in this cause, Hakan Senalan, a paranoid schizophrenic, had been in the custody of the Lake County Jail without his prescribed antipsychotic medication for over one month.

**ANSWER: Defendants deny that Plaintiff was without antipsychotic medication for over a month as Plaintiff had been given or was offered a substitute psychotropic medication in lieu of Seroquel. Defendants deny the remaining allegations of Paragraph 10.**

12. At approximately 9:00 a.m. on July 18, 2011, Defendant Corrections Officer Upton entered the segregation unit of the Lake County Jail with Defendant Officer Mazur to speak with Hakan Senalan about an alleged minor rule violation.

**ANSWER: Defendants admit that Officers Upton and Mazur went to the administrative segregation unit to advise Plaintiff of the major rule violation for which he was pending a disciplinary hearing. Defendants deny Plaintiff's claim that the rule violation was "minor."**

13. Feeling threatened by the presence of the two officers in the doorway to his cell, an unmedicated and delusionally paranoid Hakan Senalan rose to his feet while the officers were blocking the doorway. As Hakan Senalan stood up, Defendant Upton forcefully pushed Hakan Senalan away with his left hand.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's claim that he was "delusionally paranoid" or what Plaintiff's state of mind was at the time Officers Upton and Mazur were at his cell. Defendants admit that they remained outside of Plaintiff's cell while advising him of his major rule violation, and that when Plaintiff attempted to leave the cell multiple times that Upton raised his arm and hand in an effort to restrain Plaintiff and prevent him from exiting the cell.**

14. Hakan Senalan remained standing. In a series of unnecessary aggressive actions, Defendant Upton removed his O.C. spray from his holster and sprayed Hakan Senalan in the face. Hakan Senalan did not fall to the ground. Defendant Upton then deployed his taser and attempted to fire a cartridge at Hakan Senalan. The taser failed to deploy. Defendant Officer

Upton tried to fire his taser a second time, but it again did not deploy. Finally, Defendant Upton removed the cartridge and performed a "dry stun" on Hakan Senalan by making direct contact.

**ANSWER:** **Defendants admit that Officer Upton used O.C. spray in response to Plaintiff's conduct, admit that the spray had no effect on Plaintiff, and admit that Upton attempted to use his taser and that it did not deploy on two occasions. Defendants deny that Upton's actions were unnecessary or that Upton made direct contact with the taser to Plaintiff's person, and deny the further allegations of Paragraph 14.**

15. Determining that the taser had not had its full and intended effect, Defendant Upton then began to strike Hakan Senalan in the face.

**ANSWER:** **Defendants admit that the taser had no effect on Plaintiff as Upton never made direct contact with the taser to Plaintiff's person. In further answering, Defendants admit that Officer Upton did strike Plaintiff in the face in response to Plaintiff's actions in trying to strike Upton and given that Upton had exhausted all other efforts to defend himself and gain Plaintiff's compliance. Defendants deny any remaining allegations inconsistent with these admissions.**

16. As a result of the pepper spray and taser stunning, Hakan Senalan experienced severe discomfort and pain.

**ANSWER:** **Defendants deny the allegations of Paragraph 16.**

17. After hitting Hakan Senalan in the face, Defendant Officers Upton and Mazur subdued Hakan Senalan, and waited for command and transport to restrain Hakan Senalan and remove him from his cell.

**ANSWER:** **Defendants admit that Officer Upton restrained Plaintiff until the CRT arrived to transfer Plaintiff to administrative segregation. Defendants deny any remaining allegations inconsistent with these admissions.**

18. Defendant Officers Reed, Rice and Pfleger arrived at Hakan Senalan's cell at about 9:15 a.m. on July 18, 2011. Defendant Reed ordered Defendant Upton and Mazur to leave the O.C. spray-contaminated area, while he and Defendant Rice restrained Hakan Senalan. Defendant Reed laid on top of Hakan Senalan and grabbed Hakan Senalan's left arm, while

Defendant Rice grabbed his right. Defendant Pfleger restrained Hakan Senalan's legs. They forced his arms to the front of his body, handcuffed him and removed him from his cell.

**ANSWER:** **Defendants admit that Reed, Rice and Pfleger responded to assist Officers Upton and Mazur, and that Upton and Mazur were directed to leave the cell due to the O.C. contamination. In further answering, Defendants admit that Reed, Rice and Pfleger restrained Plaintiff until he could be cuffed. Defendants deny any remaining allegations inconsistent with these admissions.**

19. Defendants Rice and Reed took Hakan Senalan to Booking Cell B-9 in the Lake County Jail, stripped him naked and pushed him prone to the floor. The Defendant officers removed the handcuffs from Hakan Senalan's arms and locked him in the cell.

**ANSWER:** **Defendants admit that Reed and Rice transferred Plaintiff to the property room for decontamination of the O.C. spray and then placed Plaintiff in B-9 for a one hour post spray watch during which time Plaintiff was naked and directed to remain prone on the floor until Defendants left the cell.**

20. Corrections officers informed Lake County Jail medical staff of the events of that morning. In response, Dr. H. Singh, Lake County Jail psychiatrist, ordered that Hakan Senalan be forcefully medicated with substitute antipsychotic medication. Dr. Singh had not witnessed any of the events that morning. In fact, he had not seen Hakan Senalan since May 12, 2011. The administration of the medication was without consent.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations with respect to Dr. Singh's last examination of Plaintiff. Defendants admit that Dr. Singh ordered the forced medication of Plaintiff with Haldol, an antipsychotic medication, and that Dr. Singh was not present during Defendants' earlier interactions with Plaintiff.**

21. In response to Dr. Singh's order of forced medication, Defendant Sergeants King and Kinville activated the Lake County Jail Corrections Response Team to assist the Lake County Jail medical staff in forcing the substitute psychotropic medication on Hakan Senalan.

**ANSWER:** **Defendants admit that Sgt. King activated the CRT to assist medical staff with the forced medication. Defendants deny any remaining allegations inconsistent with these admissions.**

22. At approximately 9:45 AM on July 18, 2011, Defendant Officers Rice, Reed, Mazur and Pfleger assembled in the Lake County Jail gymnasium, while Sergeant Kinville videotaped the forced administration of medication to Hakan Senalan.

**ANSWER:** **Defendants admit the allegations of Paragraph 22.**

23. Defendants Rice, Reed, Mazur and Pfleger marched from the gym to Booking Cell B-9. When they arrived, Hakan Senalan was locked in the booking cell, naked and cowering on the floor in a prone position.

**ANSWER:** **Defendants admit the allegations of Paragraph 23, but deny Plaintiff's characterization that he was "cowering" on the floor.**

24. Defendant Pfleger ordered Hakan Senalan to remain in the prone position in the back of the cell. When the doors to the cell unlocked, the four Defendant officers rushed into the cell and piled on top of Hakan Senalan, as he repeatedly pleaded, "Please don't. Please help. Don't do this to me. Don't do this."

**ANSWER:** **Defendants admit the allegations of Paragraph 24.**

25. Defendants Reed, Rice and Mazur sat on top of Hakan Senalan, with Rice pinning his left arm to his side, Mazur sitting on top of Hakan Senalan's legs and Reed restraining Hakan Senalan's right side.

**ANSWER:** **Defendants admit that they restrained Plaintiff while he was prone on the floor in order for medical staff to administer the Haldol, but deny Plaintiff's characterization that they were "sitting on top of" Plaintiff or that the restraint method used was unnecessary or constituted excessive force.**

26. While Hakan Senalan was naked and pinned to the ground pleading for the officers to stop, to help him, crying out loud "Why? Why?", Lake County Jail Nurse Oscar

Caceres forcibly injected an antipsychotic substitute, 10 mg Haldol/2 mg Ativan, into Hakan Senalan's left buttock.

**ANSWER:** **Defendants admit that Caceres injected Plaintiff with Haldol and that Plaintiff questioned the need for the forced medication while he was restrained by Defendants to the floor.**

27. After Nurse Caceres left the cell, Defendants Rice, Reed, Pfleger and Mazur backed out of the cell one by one, as Hakan Senalan remained naked and prone in Booking Cell B-9.

**ANSWER:** **Defendants admit the allegations of Paragraph 27.**

28. Hakan Senalan was subsequently charged with misdemeanor counts of battery, aggravated assault of a peace officer and resisting a peace officer as a result of the alleged July 18, 2011 incident.

**ANSWER:** **Defendants admit the allegations of Paragraph 28.**

29. On August 29, 2011 the Lake County State's Attorney dismissed the initial domestic battery charges against Hakan Senalan. On November 26, 2012, the Lake County State's Attorney dismissed the July 18, 2011 charges of battery, aggravated assault and resisting a peace officer.

**ANSWER:** **Defendants admit the allegations of Paragraph 29.**

30. The beating and forced medication of Hakan Senalan were a result of willful and malicious, improper conduct by the Defendants, each of them.

**ANSWER:** **Defendants deny the allegations of Paragraph 30.**

31. As a proximate result of the Defendants' above described misconduct, Hakan Senalan was physically beaten and injured by Defendant corrections officers John Upton, Martin Mazur, Timothy Pfleger, Carnell Reed and Matthew Rice. Further, Hakan Senalan was forcibly

administered medication to which he never consented by Dr. Singh and Lake County Jail Nurse Oscar Caceres; unlawfully detained by the Defendants; wrongfully charged with battery, aggravated assault and resisting a peace officer; and otherwise deprived of his civil rights and liberties.

**ANSWER:** **Defendants deny the allegations of Paragraph 31.**

## COUNT I
## 42 U.S.C. Sec. 1983-False Arrest/Unlawful Detention

Defendants make no response to the allegations contained in Count I, as Plaintiff's false arrest claim was dismissed by this Court on February 2, 2015. Memorandum Opinion and Order (Doc. 42).

## COUNT II
## 42 U.S.C. Sec. 1983 - Assault & Battery[1]

38. Plaintiff re-alleges paragraphs 1 through 37 of his complaint.

**ANSWER:** **Defendants adopt and incorporate their answers to Paragraphs 1 through 31 *supra* as though more fully set forth as Paragraph 38 of this Count II.**

39. Acting under the color of law, the Defendants denied Hakan Senalan of rights, privileges, and/or immunities secured by the United States Constitution.

**ANSWER:** **Defendants deny the allegations of Paragraph 39.**

40. The above described treatment of a documented mentally-ill prisoner is shocking to the conscience of an ordinary citizen.

**ANSWER:** **Defendants deny the allegations of Paragraph 40.**

41. Hakan Senalan, an improperly medicated paranoid schizophrenic, was attacked, beaten and falsely detained by Defendant corrections officers, clearly shocking the conscience.

---

[1] Defendants' answers apply to the excessive force claim articulated by the Court in its Memorandum Opinion and Order (Doc. 42).

**ANSWER:** **Defendants deny the allegations of Paragraph 41.**

42. Further, the Defendant Lake County Jail staff's conduct of forcibly administering medication to Hakan Senalan- medication which he had denied and was forced the administration of- was extreme and outrageous, clearly shocking the conscience as well.

**ANSWER:** **Defendants deny the allegations of Paragraph 42.**

WHEREFORE, Plaintiff, HAKAN SENALAN, respectfully requests this Court enter judgment in his favor and against Defendant corrections officers W.R. KINVILLE, TERRY KING, JOHN UPTON, CARNELL REED, MATTHEW RICE, TIMOTHY PFLEGER, MARTIN MAZUR, Defendant, MARK C. CURRAN, JR., in their individual and official capacity, and any other relief this Court deems just and appropriate under the circumstances.

**ANSWER:** **Defendants deny that Plaintiff is entitled to a judgment or award of any damages against them whatsoever, and pray that this Court enter judgment in their favor as against Plaintiff and for the costs in defending this action.**

### Count III
### 42 U.S.C. Sec. 1985 - Conspiracy to Violate Constitutional Rights[2]

43.  Plaintiff re-alleges paragraphs 1 through 42 of his complaint.

**ANSWER:** **Defendants adopt and incorporate their answers to Paragraphs 1 through 30, and 38 through 42 *supra* as though more fully set forth as Paragraph 43 of this Count III.**

44.  Acting under the color of law, the Defendants denied Hakan Senalan of rights, privileges, and/or immunities secured by the United States Constitution.

**ANSWER:** **Defendants deny the allegations of Paragraph 44.**

---

[2] Defendants' answers apply to the conspiracy claim articulated by the Court in its Memorandum Opinion and Order (Doc. 42).

45. The above described conduct was administered maliciously and sadistically in an effort to cause harm to Hakan Senalan for the purpose of depriving, either directly or indirectly his equal protection of the laws, or of his equal privileges or immunities under the laws.

**ANSWER:** **Defendants deny the allegations of Paragraph 45.**

46. Hakan Senalan's conduct of standing up in his cell when confronted by Defendants Upton and Mazur posed no threat of safety or good order and discipline to any other inmate in the jail.

**ANSWER:** **Defendants deny the allegations of Paragraph 46.**

47. Nor did Hakan Senalan's act or actions require the amount of force displayed and used against him.

**ANSWER:** **Defendants deny the allegations of Paragraph 47.**

48. The injuries sustained by Hakan Senalan exceeded any perceived threat of injury that Defendants Upton and Mazur faced and was done with the intent to violate his rights.

**ANSWER:** **Defendants deny the allegations of Paragraph 48.**

49. Using force on a person with mental illness, such as the use of force described herein above, by Defendants Upton and Mazur, is repugnant to the conscience of mankind.

**ANSWER:** **Defendants deny the allegations of Paragraph 49.**

50. The aforesaid acts of the Defendant Lake County Sheriff's Department and its corrections officers resulted in the violation of Hakan Senalan's rights.

**ANSWER:** **Defendants deny the allegations of Paragraph 50.**

51. Defendant Lake County Jail corrections officers, willfully, intentionally, and maliciously assaulted Hakan Senalan through their aforesaid acts, causing extreme terror, mental anguish and emotional distress.

**ANSWER:** **Defendants deny the allegations of Paragraph 51.**

52. Defendant Lake County Sheriff's Department corrections officers, through their aforesaid acts, were without probable cause but with the presence of malice resulting in damages to Hakan Senalan.

**ANSWER:** **Defendants deny the allegations of Paragraph 52.**

53. The Plaintiff Hakan Senalan as well as other citizens that enter the Lake County Jail has a right to be free from mental and physical abuse at the hands of the Defendant Lake County Sheriff's Corrections officers.

**ANSWER:** **Defendants make no answer to the purported conclusion of law set forth in Paragraph 53, and in further answering deny Plaintiff's claims of mental and physical abuse by Defendants.**

WHEREFORE, Plaintiff, HAKAN SENALAN, respectfully requests this Court enter judgment in his favor and against Defendant corrections officers W.R. KINVILLE, TERRY KING, JOHN UPTON, CARNELL REED, MATTHEW RICE, TIMOTHY PFLEGER, MARTIN MAZUR, Defendant, MARK C. CURRAN, JR., in their individual and official capacity, and any other relief this Court deems just and appropriate under the circumstances.

**ANSWER:** **Defendants deny that Plaintiff is entitled to a judgment or award of any damages against them whatsoever, and pray that this Court enter judgment in their favor as against Plaintiff and for the costs in defending this action.**

**Count IV**
**42 U.S.C. Sec. 1983 - Color of Law**

Defendants make no response to the allegations contained in Count IV, as this purported claim was dismissed by this Court on February 2, 2015. Memorandum Opinion and Order (Doc. 42).

**Count V**
**42 U.S.C. Sec. 1983 –Indemnification**

61. Plaintiff re-alleges paragraphs 1 through 60 of his complaint.

**ANSWER:** **To the extent that an answer was given to the above referenced Paragraphs *supra*, Defendants adopt and incorporate their answers into this Count V as though more fully set forth herein.**

62. Defendant Mark Curran is an independently elected constitutional officer under Illinois law. As such, the existence of the Sheriff's Office has a legal existence separate from the county and the state and is a suable entity. Ill. Const., Art. VII, Sec. 4(c).

**ANSWER:** **Sheriff Curran admits that he is the duly elected Sheriff for Lake County, Illinois, but makes no answer to the further conclusions of law set forth in Paragraph 62.**

63. All remaining defendants are correctional officers acting within the scope of their employment while engaged in conduct as correctional officers upon an inmate of the jail.

**ANSWER:** **Defendants admit that at all relevant times they were employed as correctional officers by the Lake County Sheriff, and otherwise acting in the course and scope of that employment.**

64. Illinois law, 745 ILCS 10/9-102, provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** **Defendants admit that Illinois law provides that public entities are statutorily obligated to pay any adverse compensatory verdict or judgment entered against any employee thereof if the conduct complained of is determined to have been performed in the course and scope of that employment.**

65. Defendants Kinville, King, Upton, Reed, Rice, Pfleger and Mazur are or were employees of the Lake County Sheriff's Office who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:** **Defendants admit that they were employees of the Lake County Sheriff at all relevant times, but deny the further allegations of Paragraph 65 and**

**specifically deny that they committed any misconduct or violated any of Plaintiff's rights as alleged.**

WHEREFORE, Plaintiff, HAKAN SENALAN, respectfully requests this Court enter judgment in his favor and against Defendant corrections officers W.R. KINVILLE, TERRY KING, JOHN UPTON, CARNELL REED, MATTHEW RICE, TIMOTHY PFLEGER, MARTIN MAZUR, Defendant, MARK C. CURRAN, JR., in their individual and official capacity, and any other relief this Court deems just and appropriate under the circumstances.

**ANSWER:** Defendants deny that Plaintiff is entitled to a judgment or award of any damages against them whatsoever, and pray that this Court enter judgment in their favor as against Plaintiff and for the costs in defending this action.

### AFFIRMATIVE DEFENSES

Defendants, in addition to the denials and defenses set forth hereinabove this responsive pleading, assert the following additional affirmative defenses to Plaintiff's purported civil rights claims, to wit:

### First Affirmative Defense
### (Qualified Immunity/Public Official Immunity)

1. At all relevant times, the individually named Defendants were employed by the Lake County Sheriff as corrections officers at the Lake County Jail and acting within the course and scope of that employment.

2. On and prior to July 18, 2011, Plaintiff had refused antipsychotic medications prescribed to him by medical staff.

3. On July 16, 2011, Plaintiff threatened and fought with two corrections officers and was transferred to administrative segregation pending a disciplinary hearing.

4. On July 18, 2011 and while in administrative segregation, Officers Upton and Mazur were attempting to advise Plaintiff of the pending rule violation when Plaintiff attempted

to exit his cell and became confrontational, refused to follow direct orders, and ultimately became combative with Officers Upton and Mazur.

4. In response to Plaintiff's aggressive actions and refusal to follow orders, Officer Upton utilized O.C. spray in an effort to gain Plaintiff's compliance and in self defense.

5. Subsequent efforts to gain compliance and control of Plaintiff by Officer Upton were unavailing, as Plaintiff attempted to strike Upton in the face and did strike Upton's arm, which strike resulted in the taser falling to the floor of the cell.

6. Ultimately, Defendants restrained Plaintiff and moved him to a more controlled booking cell.

7. Defendants performed the custodial move by taking physical control of Plaintiff's person with necessary restraint holds and placing Plaintiff in handcuffs.

8. Defendants further restrained Plaintiff as was reasonable and necessary for the administration of medical staff injecting Plaintiff with prescribed antipsychotic medication, and for the protection of jail staff during this process.

9. Defendants aver that they are entitled to the defense of qualified and/or public official immunity in that their physical control, restraint, and/or handcuffing of Plaintiff at all relevant times was reasonable and necessary and did not violate any clearly established constitutional right of Plaintiff.

WHEREFORE, Defendants, Kinville, King, Rice, Reed, Upton, Pfleger, and Mazur, pray that this Court find that they are immune from suit on the basis of qualified immunity and pray for a judgment in their favor as against Plaintiff and for the costs associated with the defense of this action.

**Second Affirmative Defense**
**(Self-Defense/Reasonable Use of Force)**

10-17. Defendants adopt and incorporate Paragraphs 1 through 9 of the above First Affirmative Defense as though more fully set forth herein as Paragraphs 10 through 17 of Defendants' Second Affirmative Defense.

18. Defendants contend that any force used in response to Plaintiff's aggressive actions, combativeness, and refusal to follow orders, was reasonable and necessary, including the use of O.C. spray, physical strikes, and restraint holds, and was therefore not excessive or in violation of Plaintiff's Fourteenth Amendment rights.

Wherefore, Defendants, Kinville, King, Rice, Reed, Upton, Pfleger, and Mazur, pray for judgment in their favor as against Plaintiff and for the costs associated with the defense of this action.

**DEFENDANTS DEMAND TRIAL BY JURY.**

          **CURRAN, KINVILLE, KING, RICE, REED, UPTON, PFLEGER, MAZUR**

          By: *s/Julie M. Koerner*
          Julie M. Koerner, Bar# 6204852
          Attorney for Defendants
          O'Halloran, Kosoff, Geitner & Cook
          650 Dundee Road, Suite 475
          Northbrook, IL 60062
          Telephone: (847) 291-0200
          E-mail: jkoerner@okgc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HAKAN SENALAN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13 C 05161 |
| ) | |
| MARK C. CURRAN, JR. et. al., ) | Judge Edmond E. Chang |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 13, 2015, I electronically filed ***Defendants' Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jed H. Stone
Stone & Associates, Ltd.
415 Washington St., Suite 107
Waukegan, IL 60085
jstone@jedstone.com

        **CURRAN, KINVILLE, KING, RICE,
REED, UPTON, PFLEGER, MAZUR**

By: *s/Julie M. Koerner*
Julie M. Koerner, Bar# 6204852
Attorney for Defendants
O'Halloran, Kosoff, Geitner & Cook
650 Dundee Road, Suite 475
Northbrook, IL 60062
Telephone: (847) 291-0200
E-mail: jkoerner@okgc.com